STATE, Respondent v. NELSON, Appellant

(169 N.W.2d 533)

(File No. 10473. Opinion filed July 24, 1969)

James Abourezk, Rapid City, for defendant and appellant.

Frank L. Farrar, Atty. Gen., Michael B. Strain, Asst. Atty. Gen., Pierre, for plaintiff and respondent.

RENTTO, Judge.

The information on which this prosecution is based charged the defendant in two counts with burglaries in the third degree, both committed on April 19, 1967. The first involved the breaking and entering of the Hills Brake and Equipment Building in Rapid City with intent to commit larceny, and the second a barn belonging to Edgar Kellam in the same county. The jury found the defendant guilty of burglary in the third degree as charged in count I. He appeals from the judgment entered thereon sentencing him to imprisonment in the penitentiary. A verdict of not guilty was directed on the charge in count II.

The defendant's assignments of error present three questions—(1) insufficiency of the evidence; (2) admission in evidence of material taken in a search of his automobile; and (3) failure to allow him more than ten peremptory challenges.

From the evidence introduced by the state it appears that Edgar Kellam returned to his ranch home located ten miles east of Rapid City on Highway 40, where he lived alone, at about 8:45 p. m. on the 19th day of April, 1967. He came from the east with a horse trailer attached to the automobile he was driving. In the trailer he had two horses. The road to the

municipal airport intersects Highway 40 near his home, and in the proximity of the intersection is a security light which was on when he arrived at his place. On his driveway he saw a parked car of which he got a good view. One person was sitting in it on the front seat.

In taking the horses out of the trailer and into his barn, he entered the barn by the south door and, as he did so, he heard the north door, which he had wired shut that morning, bang. In the barn he discovered a gray metal safe lying on its back on the floor. It is described in the evidence as being about 2 1/2 by 2 1/2, by about 3 feet deep and identified as belonging to Hills Brake and Equipment Company. It had been stolen that evening. On it lay a hammer, and a big screwdriver was stuck in the edge of the door. A start had been made at peeling it open. He went promptly to his house and telephoned the sheriff's office giving them a description of the car he had seen parked near his driveway and telling of his discovery.

After making this call he went out to unhook the trailer from his car. While doing this he saw the car he had previously observed parked under the security light, going west on Highway 40 towards Rapid City. Shortly thereafter Deputy Sheriff Larson arrived at the ranch. After talking with Mr. Kellam he called patrolman Lyle Nelson on his car radio. Then they went into the barn to look at the safe and noticed that the hammer and screwdriver had disappeared. In looking over the ground outside the barn two sets of footprints were observed. One of these appeared to have been that of cowboy boots and the other of flat heel shoes. These they traced from the barn door to where Mr. Kellam had seen the parked car. Similar footwear prints were noticed in and around Hills Brake and Equipment Building later that night.

Patrolman Nelson, after his radio conversation with Deputy Larson, went east out of Rapid City on Highway 40 looking for the car that had been parked at the Kellam ranch. About 9:30 that evening he stopped it at a place referred to as the sales barn turnoff. The defendant Lyle Nelson, stepped out of the

driver's side. There were two other men, Richard Vines and Walter Wheeler, in the car, both on the front seat. The defendant and these two had been seen dining together in a cafe in Rapid City at about 5 p. m. on the 19th.

The defendant was wearing cowboy boots and Vines had on loafers. Apparently it had been raining during that evening and night, and quite hard at times. The footwear and socks of defendant and Vines were wet and muddy, but those worn by Wheeler who was 69 years of age, were dry. The car in which they were riding, owned by the defendant's father, was towed to the sheriff's garage in Rapid City. The occupants were arrested and taken to the county jail. The safe was taken to the sheriff's office where the sheriff and his chief deputy unloaded it the next morning.

On the night in question, Vines was wearing a red cotton sweatshirt and had in his possession a pair of brown cloth gloves which were wet and muddy. These articles of apparel were taken from him after his arrest. That night on a nail protruding from the door casing of the north door of the Kellam barn, a piece of red fiber or lint was discovered.

An expert from the Federal Bureau of Investigation testified that this fiber could have originated from Vine's sweatshirt and that it was of the same composition, degree of twist and direction of twist as the yarn in the sweatshirt and that the dye colorations were the same. On his brown cloth gloves paint particles were found which another F.B.I. expert stated were the same as particles of paint scraped from the safe. The same was true as to paint particles found in the debris taken from the trunk of the car in which the defendant and his companions were apprehended that evening.

The defendant was a rancher and rodeo producer. A short time before the incident in question, he had traded a saddle to Mr. Kellam for a horse. Within a period of two months before the 19th he had been at the Kellam ranch three or four times. That night a plaster cast was made of one of the cowboy boot

heel marks observed near the Kellam barn. The nails in the heel of the defendant's right boot appeared to match up with the indentations in this cast. The defendant admitted that his car was parked near the Kellam ranch at about nine that night while he was on his way to his ranch east of Pine Ridge, but claimed it was stopped for the purpose of changing a tire.

■ About two o'clock on the afternoon of the 20th, two officers searched the car in which the defendant and his two associates were riding when arrested. In so doing, they collected debris from the trunk using a vacuum cleaner. Several additional articles were taken from the car in the search, but only the particles of paint found in the trunk were introduced as evidence by the state. Defendant's claim that the search of the trunk of his car was illegal was timely presented to the court by motion to suppress and by objection to the admission of evidence. These the court denied and overruled.

Before searching the car a search warrant was secured from the judge of the Municipal Court of Rapid City authorizing the officers to search the car in question "and seize any evidence in connection with the violation of SDC 13.3703, or otherwise". This section defines the crime of burglary in the third degree. The affidavit on which the warrant was issued was made by Mr. Kellam, but it is not included in the settled record. Manifestly he had probable cause to believe that the automobile contained evidence of the theft of the safe.

The defendant claims that the search of the trunk of the car was unreasonable because the warrant under which it was done did not sufficiently describe the property to be seized. On this basis he contends that the use in evidence of the paint particles found therein was improper and constituted reversible error. He also urges that tangible evidence of the commission of a crime may not be seized under authority of a search warrant.

Article VI, Section 11 of our Constitution provides that the affidavit upon which a search warrant is issued shall particularly

describe the thing to be seized. The Fourth Amendment to the United States Constitution contains a similar provision. The statute under which this warrant was issued, SDCL 1967 23-15-9, provides that the warrant must command the officer to search the place named for the property specified. The statutory form of the warrant set out in SDCL 1967 23-15-10 states that the property sought be described with reasonable particularity. Marron v. United States, 275 U.S. 192, 48 S.Ct. 74, 72 L.Ed. 231, details the salutary purpose to be served by the "particularity" provision—to make general searches impossible.

It is to be noted that the warrant must describe the property sought in something other than general terms. It must be described with reasonable particularity. This requirement must be given a reasonable interpretation consistent with the type or character of the property sought. Its purpose is to protect against unbridled searches. The description is required to be specific only so far as the circumstances will ordinarily allow. Wharton's Criminal Law and Procedure (Anderson), § 1555; 79 C.J.S. Searches and Seizures § 81c; 47 Am.Jur., Searches and Seizures, § 37. Does this warrant satisfy that requirement? We think it does not.

Until rather recently the authorities have held that the Fourth Amendment to the U.S. Constitution did not permit searches for "mere evidence" under a search warrant. In Warden, Maryland Penitentiary v. Hayden, 387 U.S. 294, 87 S.Ct. 1642, 18 L.Ed.2d 782, this view was rejected. In addition to holding that it is permissible to seize such items under a search warrant that case makes clear that when the materials involved are evidentiary in character, there is no relaxation of the requirement that the items sought be described in the warrant with reasonable particularity. Incidentally, our legislature by Ch. 154, Laws of 1969 authorized searches for evidence.

The constitutional and statutory provisions above referred to seem to require that the description of the property searched for must be complete in the warrant itself. Clearly the descrip-

tion here in question is not. It does not set out any particulars or identifying details of the crime as to which the evidence is being sought.

One of the officers who executed the warrant had participated in the full investigation of the crime involved, including apprehension and arrest of defendant and his associates. With this background he could be expected to |search for the particles of paint that they found in the trunk of the car. From the warrant itself an officer without that background would get no indication as to what he was authorized to search for. Compare this with the warrant description in Clemas v. United States, 8 Cir., 382 F.2d 403. The description in the warrant here involved, if it can be termed that, does not describe anything with reasonable particularity. This infirmity renders the warrant void and the search and seizure made under it unreasonable.

The state also urges that the search should be sustained as being incidental to the arrest of the defendant. The arrest was made at about 9:30 on the night of April 19th on the highway some distance from Rapid City, while the search took place in the sheriff's garage in Rapid City at about 2 o'clock on the afternoon of the next day. This we must hold is too remote in time and place to be incident to the arrest. Preston v. United States, 376 U.S. 364, 84 S.Ct. 881, 11 L.Ed.2d 777; Dyke v. Taylor Implement Mfg. Co., 391 U.S. 216, 88 S.Ct. 1472, 20 L.Ed.2d 538, and State v. McCreary, 82 S.D. 111, 142 N.W.2d 240. Nor is it saved by the holding in Cooper v. California, 386 U.S. 58, 87 S.Ct. 788, 17 L.Ed.2d 730. Petition for rehearing and modification denied, 386 U.S. 988, 87 S.Ct. 1283, 18 L.Ed.2d 243. See also Chimel v. California, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685. The search in Cooper was upheld because of a statute under which the car had to be held by the officers for the purpose of instituting forfeiture proceedings.

Since the judgment must be reversed because of the use of evidence obtained by an unreasonable search and seizure we need not be concerned with the claimed insufficiency of the

evidence. However, as the state might desire to retry the defendant, it is proper that we express our view on the number of peremptory challenges the defendant is entitled to exercise.

Burglary in the third degree is punishable by imprisonment in the State Penitentiary for any term not exceeding 15 years. SDCL 1967 22-32-10. So far as here material, SDCL 1967 23-43-28, provides that:

> "In all criminal cases either party is entitled to the following peremptory challenges: * * * (2) When the offense is punishable by imprisonment in the state penitentiary for a term less than life, ten;".

The defendant was permitted to exercise only ten peremptory challenges. He complains of this claiming that he was entitled to exercise twenty peremptories, ten on each of the offenses charged in the information. We do not agree.

The fact that an information contains several counts, joinable therein, charging separate and distinct offenses does not entitle the accused to any additional peremptory challenges. People v. Kelly, 203 Cal. 128, 263 P. 226; State v. Compton, 57 N.M. 227, 257 P.2d 915; People v. Haney, 29 A.D.2d 698, 286 N.Y.S.2d 105; Reynolds v. State, 101 Ga.App. 715, 115 S.E.2d 214; State v. Abboud, 181 Neb. 84, 147 N.W.2d 152, cert. den. 389 U.S. 848, 88 S.Ct. 74, 19 L.Ed.2d 117, rehearing denied 389 U.S. 964, 88 S.Ct. 324, 19 L.Ed.2d 380. Even though two separate crimes were charged in the information, there was only one case and one defendant on trial. The same rule seems generally applied when several indictments or informations against the same defendant are consolidated for trial. Beckett v. United States, 6 Cir., 84 F.2d 731; Commonwealth v. Peronace, 328 Pa. 86, 195 A. 57; Mitchell v. State, 233 Ind. 16, 115 N.E.2d 595, cert. den. 347 U.S. 975, 74 S.Ct. 786, 98 L.Ed. 1114. In either situation there is only one trial and one jury.

Reversed.

BIEGELMEIER, P. J., and ROBERTS and HOMEYER, JJ., concur.

HANSON, J., dissents.

BIEGELMEIER, Presiding Judge, concurring:

I concur and add a few words. A municipal judge is a magistrate (§ 23-21-4) who may issue a search warrant (§ 23-15-1) based on an affidavit (§23-15-2) or complaint under oath (§ 23-15-8) showing probable cause therefor. Section 23-15-9 then provides if the magistrate is satisfied of the existence of the grounds of the application or there is probable cause to believe their existence, he must issue the warrant to search for "the property specified".

More than the statutory reference made in the search warrant here involved was necessary and is correctly determined in the opinion under the statutes and constitution of South Dakota mentioned therein. This result is also borne out by § 23-15-23 which requires that if the property "taken is not the same as that described in the warrant \* \* \* the magistrate must cause it to be restored to the person from whom it was taken." The above citations are from SDCL 1967 but have been in our statutes for many years and are conclusive of this appeal.

Decisions of the United States Supreme Court are of like effect as Chimel v. California cited by Judge Rentto indicates. There the Court quotes from Trupiano v. United States, 1948, 334 U.S. 699, 68 S.Ct. 1229, 92 L.Ed. 1663, where the Court said the rule rests on the desirability of having "magistrates rather than police officers determine when searches and seizures are permissible and what limitations should be placed" thereon and McDonald v. United States, 1948, 335 U.S. 451, 69 S.Ct. 191, 93 L.Ed. 153, 155, that the Fourth Amendment interposes a magistrate between the citizen and the police so that "an objective mind might weigh the need to invade that privacy in order to enforce the law." This is a duty placed on the magistrate. Our state constitution and statutes and the cited decisions of the United States Supreme Court require this Court strike down the search warrant for failure to comply therewith.